UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALBERT NEWTON,

                         Petitioner,                         **MEMORANDUM & ORDER**
                                                              18-CV-5253 (PKC)
              - against -

WILLIAM KEISER,

                         Respondent.
-----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Petitioner Albert Newton, appearing *pro se*,[1] seeks a writ of *habeas corpus* pursuant to 28

U.S.C. § 2254 challenging his conviction for attempted second-degree murder.  For the reasons

set forth below, the petition is denied in its entirety.

# BACKGROUND

I.    **Facts**

In the early-morning hours of September 10, 2012, Petitioner got into argument with his

ex-girlfriend, Shyrel Matthews ("Matthews").[2]  (Trial Transcript ("Tr."), Dkt. 7-3, at ECF[3] 916:1–

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to
raise the strongest arguments that [it] suggest[s]."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474 (2d Cir. 2006) (internal quotations, italics, and citation omitted).  However, the Court
notes that it "'need not act as an advocate for'" Petitioner.  *Curry v. Kerik*, 163 F. Supp. 2d 232,
235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] Though Petitioner and Matthews were no longer in an intimate relationship at the time,
they continued to live together in a one-bedroom apartment with their daughter.  (Tr., Dkt. 7-3, at
ECF 960:24–961:20.)

[3] Citations to "ECF" refer to the "Page ID" number generated by the Court's CM/ECF
docketing system and not the document's internal pagination.

24; *see also id.*, Dkt. 7-4, at ECF 1208:2–3; 1209:5–12.)[4]  When the argument first began, Matthews was on the phone with her cousin, Saran Townsend ("Townsend"), who heard Petitioner and Matthews fighting.  (*Id.*, Dkt. 7-3, at ECF 916:8–14, 1015:22–1016:7, 1016:19–1017:3.)  In the course of the argument, Petitioner pointed a loaded gun at Matthews.  (*Id.*, Dkt. 7-3, at ECF 917:9–11; *see also id.*, Dkt. 7-4, at ECF 1203:9–11, 1210:6–21.)  Petitioner and Matthews proceeded to physically struggle over the gun, which went off without hitting Matthews.  (*Id.*, Dkt. 7-3, at ECF 917:22–24.)  Matthews subsequently ran into the bathroom, locked herself in, and started banging on the wall in an attempt to alert the neighbor.  (*Id.*, Dkt. 7-3, at ECF 918:1–9; *see also id.*, Dkt. 7-4, at ECF 1203:7–1204:1, 1210:22–23.)  Matthews heard Petitioner searching for something in the kitchen, and then the bathroom door opened suddenly and Petitioner grabbed Matthews out of the bathroom and stabbed her in the head with a screwdriver.  (*Id.*, Dkt. 7-3, at ECF 918:12–19; *see also id.*, Dkt. 7-4, at ECF 1204:9–11.)  Mathews continued to try and reach the front door to escape the apartment, but Petitioner physically prevented her from leaving and hit her over the head with a rum bottle.  (*Id.*, Dkt. 7-3, at ECF 919:3–22; *see also id.*, Dkt. 7-4, at ECF 1204:16–1205:14.)  Matthews then ran into the kitchen, where Petitioner grabbed a knife and stabbed Matthews repeatedly in the head and torso before leaving the apartment.  (*Id.*, Dkt. 7-3, at ECF 919:23–920:14, 921:7; *see also id.*, Dkt. 7-4, at ECF 1206:6–13.)

With Petitioner gone, Matthews left the apartment and sought help from Tracy Vance ("Vance"), a resident of another apartment in the building.  (*Id.*, Dkt. 7-2, at ECF 832:1–21; *see*

---

[4] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-CV-3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

*also id.*, Dkt. 7-3, at ECF 922:6–16.) Vance allowed Matthews into her apartment and called for an ambulance. (*Id.*, Dkt. 7-2, at ECF 832:24–833:5.) Matthews was taken to the hospital and treated for two skull fractures, bleeding in her ear canal, and multiple stab wounds, including a pierced right lung. (*Id.*, Dkt. 7-3, at ECF 1004:6–9, 1005:4–5.) The day after the incident, Petitioner called Matthews's father, Byron Matthews, and said that Petitioner was "sorry about what happened" and that he would "call [the father] back and explain [it] to [him]." (*Id.*, Dkt. 7-2, at ECF 809:17–18.)

Petitioner was arrested on October 5, 2012. (*Id.*, Dkt. 7-3, at 1072:15–1074:14.) He was charged, under Queens County Indictment Number 544/2013, with Attempted Murder in the Second Degree, Assault in the First Degree, Assault in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Fourth Degree. (State Court Record ("R."), Dkt. 7, at 25–26.)

## II. Trial

Petitioner's jury trial was held from March 13, 2014 to March 25, 2014 before Justice Deborah Modica, Supreme Court, Queens County. (Tr., Dkt. 7-1, at ECF 339.) At trial, the prosecution presented 13 witness including Matthews, Townsend, and Vance, who testified to the events of September 10, 2012. (*See generally id.*, Dkt. 7-2, at ECF 829–36 (Vance testimony), 908–914, Dkt. 7-3, 915–94 (Matthews testimony), 1011–33 (Townsend Testimony).) Matthews's father testified to his phone call with Petitioner. (*See generally id.*, Dkt. 7-2, at ECF 806–13.) Dr. Natalie Hubbard testified to the injuries that Matthews suffered. (*Id.*, Dkt. 7-3, at ECF 999–1010.) The prosecution also called several police officers, detectives, and technicians, who testified to the state of Matthews's apartment after the incident and their subsequent investigation. (*See generally id.*, Dkt. 7-2, at ECF 814–26 (Police Officer Brust testimony), 840–53 (Police Communications

Technician Quist testimony), 857–67 (Police Officer Emmolo testimony), 867–91 (Detective Gallagher testimony), 891–904 (Detective Brusestle testimony), Dkt 7-3, 1035–50 (Criminalist Tamariz testimony), 1050–64 (Detective Gratta testimony), 1069–75 (Detective Langelloti testimony).)

On Monday, March 24, 2014, in anticipation of the prosecution finishing its case, Petitioner's trial counsel moved for an overnight adjournment to prepare Petitioner's trial testimony. (*Id*., Dkt. 7-3, at ECF 1065:24–1066:6.) The trial court denied the motion and stated that Petitioner would testify after the lunch break. (*Id*., Dkt. 7-3, at ECF 1066:7–22.) After the prosecution presented its last witness, Petitioner's trial counsel moved to dismiss the case. (*Id*., Dkt. 7-3, at ECF 1075:15–1077:18.) In response, the prosecution agreed to dismiss the weapons possession charges related to the screwdriver, knife, and rum bottle, but not as to the firearm. (*Id*., Dkt. 7-3, at ECF 1079:7–14, 1080:2–3.) However, the trial court denied the motion as to the attempted murder, assault, and firearm possession charges. (*Id*., Dkt. 7-3, at ECF 1080:3–5.)

Petitioner testified on his own behalf. (*Id*., Dkt. 7-3, at ECF 1081–1169.) His testimony provided an alternative version of the events on September 10, 2012. Specifically, he testified that when he arrived home, he saw a man he did not recognize in the kitchen. (*Id*., Dkt. 7-3, at ECF 1098:22–1099:16, 1100:23–1101:20.) Petitioner testified that after asking who the man was and not getting an answer, he picked up a frying pan and started attacking the man as the man tried to stab Petitioner with a kitchen knife. (*Id*., Dkt. 7-3, at ECF 1102:1–13, 1103:15–20.) Petitioner then stated that Matthews entered the kitchen, got in between the men, and told them to stop fighting or else she would call the police. (*Id*., at Dkt. 7-3, at ECF 1104:4–10, 1104:22–1105:19.) Finally, Petitioner testified that eventually, he knocked the knife out of the unknown man's hand with the frying pan, the unknown man ran from the apartment, and Petitioner followed him. (*Id*.,

Dkt. 7-3, at ECF 1105:19–1106:13.) Petitioner testified that after leaving the apartment and losing sight of the unknown man, he took a cab to his family in the Bronx (*id.*, Dkt. 7-3, at 1106:21–25) and that he did not find out that Matthews was hurt until he spoke to Matthews's father the next day. (*Id.*, Dkt. 7-3, at ECF 1111:3–10.) Petitioner also testified that when he left the apartment he did not see any blood in the apartment or on Matthews. (*Id.*, Dkt. 7-3, at ECF 1128:2–6, 1129:21–25.) After testifying, Petitioner did not call any other witnesses. (*Id.*, Dkt. 7-3, at ECF 1170:2.)

The jury found Petitioner guilty of attempted murder in the second degree. (*Id.*, Dkt. 7-4, at 1274:18–1275:10.) The jury acquitted Petitioner on the weapons possession charge relating to the firearm. (*Id.*)[5] Petitioner was sentenced to 15 years of imprisonment, to be followed by five years of supervised release. (*Id.*, Dkt. 7-4, at ECF 1291:19–21, 1292:12–14.) The trial court noted that this sentence was "based on the overwhelming evidence." (*Id.*, Dkt. 7-4, at 1290:12–13.)

## III.  Procedural History

Petitioner appealed his conviction to the New York Appellate Division, Second Department ("Second Department"). (R., Dkt. 7, at 1–21, 57–65.) In his counseled brief, he argued that the trial court deprived him of his right to assistance of counsel and to prepare for his defense when it denied trial counsel's request for an overnight adjournment prior to his testimony. (*Id.* at 13–20.) Petitioner also submitted a *pro se* supplemental brief in which he argued that the trial court denied Petitioner his right to a fair trial by coercing the jury into a verdict through the implication that there was limited time to reach a verdict. (*Id.* at 63–64.) The Second Department affirmed Petitioner's judgment of conviction. *People v. Newton*, 149 A.D.3d 874 (N.Y. App. Div.

---

[5] Since the jury convicted Petitioner on the attempted murder charge, they did not consider the two assault charges, since these charges were submitted as lesser included offenses. (Tr., Dkt. 7-3, at ECF 1174:1–1175:14; *see also id.*, Dkt. 7-4, at ECF 1254:9–15, 1259:3–7.)

2017). Petitioner sought leave to appeal to the New York Court of Appeals, which denied his request. *People v. Newton*, 29 N.Y.3d 1131 (2017).

Petitioner then filed a *pro se coram nobis* motion in the Second Department in which he argued that his appellate counsel was ineffective for failing to assert that trial counsel was ineffective because his trial counsel failed to: (1) object to the trial court's erroneous jury instruction on the weapons possession count; and (2) argue that the jury's verdict was repugnant. (R., Dkt. 7, at 83–99.) The Second Department denied Petitioner's motion. *People v. Newton*, 164 A.D.3d 921 (N.Y. App. Div. 2018). Petitioner sought leave to appeal to the New York Court of Appeals, which denied his request. *People v. Newton*, 32 N.Y.3d 1114 (N.Y. 2018).

On September 14, 2018, Petitioner timely filed the instant *habeas* petition. (*See generally* Dkt. 1.)

## LEGAL STANDARD

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotations and citation omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see id.* at 301–

02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*)"; or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotations and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotations and citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotations and citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). "An unreasonable application occurs when 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement.'" *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Petitioner seeks *habeas* relief on three grounds: (1) an abuse-of-discretion claim based on the trial court's failure to grant an overnight adjournment; (2) a legal-insufficiency claim; and (3) an ineffective-assistance-of appellate-counsel claim based on two separate grounds.

## I.    Abuse of Discretion by Trial Court

Petitioner argues that the trial court abused its discretion and violated Petitioner's Sixth Amendment right to counsel when it denied Petitioner's request for an overnight adjournment during his trial.  (Petition, Dkt. 1, ¶ 14.)[6]  On Monday, March 24, 2014, after it was clear that the prosecution would finish presenting its case earlier than anticipated, Petitioner's trial counsel requested an overnight adjournment to prepare Petitioner to testify on his own behalf.  (R., Dkt. 7, at 13; *see also* Tr., Dkt. 7-3, at ECF 1065:24–1066:6.)  The trial court denied the request, stating that "[the] problem with that . . . is there's been a lot of delay in the case and built in time where all of this could have happened."  (Tr., Dkt. 7-3, at ECF 1066:7–9.)  The trial court also noted that "we do have Friday looming where the defendant is unavailable to us and we missed two Fridays already."  (*Id.* at 1066:12–14.)  Because the Second Department rejected this claim on the merits,

---

[6] Petitioner does not support this request with any further legal briefing.  However, in light of the Court's duty to liberally construe *pro se* petitions, the Court considers whether Petitioner states a claim for *habeas* relief based on the trial court's denial of Petitioner's adjournment request.

*Newton*, 149 A.D.3d at 874, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121.

"[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution].'" *Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003) (quoting *Morris v. Slappy*, 461 U.S. 1, 12 (1983)). "Scheduling is a matter that is of necessity committed to the sound discretion of the trial court." *Id.*; *see also Morris*, 461 U.S. at 11 ("Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel."). Though the trial court did note, in denying Petitioner's adjournment request, that "Friday [was] looming . . . and we missed two Fridays already," (Tr., Dkt. 7-3, at ECF 1066:12–14)—a fact that Petitioner's appellate counsel highlighted in his state court brief (*see* R., Dkt. 7, at 17)—the Court finds that the Second Department's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. *See, e.g.*, *Washington*, 876 F.3d at 403 ("An unreasonable application occurs" when "'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Harrington*, 562 U.S. at 103). As the Second Department noted, "[t]he defendant was provided with ample opportunity to confer with counsel during the subsequent lunch break and at other points before and during the course of the trial and was therefore not prejudiced by the court's denial of counsel's request." *Newton*, 149 A.D.3d at 874.

Accordingly, the Court denies Petitioner's request for *habeas* relief based on his abuse-of-discretion claim.

## II.     Legal-Insufficiency Claim

### A.     Procedural Bar

Petitioner argues that the evidence at trial was legally insufficient to support his conviction

for attempted second-degree murder.   (Petition, Dkt. 1, at 12–14.)   Respondent argues that

Petitioner's claim is procedurally defaulted because Petitioner only raised his legal-insufficiency

claim in his leave application to the Court of Appeals from the denial of his *coram nobis* motion.

(Respondent's Mem. of Law in Opp. ("Resp. Opp. Br."), Dkt. 6, at 17.)   Respondent argues that a

legal-insufficiency claim must be raised on direct appeal (*see id.* (citing *Baldwin v. Reese*, 541

U.S. 27, 29 (2004), *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995), *O'Sullivan v. Boerckel*, 526

U.S. 838, 845 (1999))), and that Petitioner, having failed to do so, has now procedurally defaulted

this claim (*see* Resp. Opp. Br., Dkt. 6, at 18 (citing *Ramirez v. Att'y Gen. of State of N.Y.*, 280 F.3d

87, 94 (2d Cir. 2001)).[7]   Finally, Respondent notes that the Court may only consider a procedurally

defaulted claim if Petitioner can show either "(1) 'cause' for the default and actual 'prejudice'

from barring the claim, or (2) that the failure to consider the claim will result in a 'fundamental

miscarriage of justice.'"   (Resp. Opp. Br., Dkt. 6, at 18 (quoting *Murray v. Carrier*, 477 U.S. 478,

485, 496 (1986)).)

The Court notes that it does appear that, under the relevant standard, Petitioner has both

(1) procedurally defaulted on this claim, and (2) failed to show that he is entitled to bring the claim

notwithstanding the procedural default.   *See Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019)

("[A] state prisoner who seeks access to a federal habeas court in the face of a procedural obstacle,

---

[7] Respondent also notes that to the extent Petitioner argues that he was not able to bring a legal-insufficiency claim because of the ineffective assistance of his appellate counsel, Petitioner's claim would still be procedurally defaulted because Petitioner was required to bring an ineffective assistance of counsel claim on this ground in his *coram nobis* motion, which he did not.   (Resp. Opp. Br., Dkt. 6, at 18–19; *cf.* R., Dkt. 7, at 83–104 (Petitioner's *coram nobis* brief).)

and who cannot overcome that obstacle by showing cause and prejudice, must advance *both* a legitimate constitutional claim *and* a credible and compelling claim of actual innocence.") (internal quotations, brackets, and citations omitted); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred,[8] we must deem the claim procedurally defaulted.") (internal quotations, brackets, and citations omitted).

### B. Merits

However, "[e]ven assuming" *arguendo*, that Petitioner's claim was not "procedurally defaulted," the Court would nevertheless "reject[] [it] on the merits." *Kirby v. Senkowski*, 141 F. Supp. 2d 383, 395 (S.D.N.Y. 2001); *see also Hudgins v. People of N.Y.*, No. 07-CV-1862 (JFB), 2009 WL 1703266, at *7 (E.D.N.Y. June 18, 2009) (determining that claim was procedurally defaulted but also explaining that "[i]n any event, even if such claim were not procedurally barred, it would fail on the merits").

"[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson*, 443 U.S. at 319). "Moreover, in considering such a sufficiency claim, a habeas court must weigh the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor." *Flowers v. Ercole*, No. 06-CV-6118 (LTS) (FM), 2009 WL 2986738, at

---

[8] It appears that such would be the case here: "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Parrish v. Lee*, No. 10-CV-8708 (KMK), 2015 WL 7302762, at *7 (S.D.N.Y. Nov. 18, 2015) (internal quotation omitted).

*20 (S.D.N.Y. Sept. 18, 2009) (citing *Jackson*, 443 U.S. at 326). As a result, "[a] habeas petitioner challenging his conviction on the ground that it was not supported by sufficient evidence 'bears a very heavy burden.'" *Taylor v. Connelly*, 18 F. Supp. 3d 242, 266 (E.D.N.Y. 2014) (quoting *Einaugler v. Sup. Ct. of State N.Y.*, 109 F.3d 836, 840 (2d Cir.1997)).

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Id.* (quoting *Ponnapula*, 297 F.3d at 179). Petitioner was convicted of attempted second-degree murder. (Tr., Dkt. 7-4, at 1274:18–1275:10.) "New York law provides that a person is guilty of intentional murder in the Second Degree when, '[w]ith the intent to cause the death of another person, he causes the death of such person.'" *Copeland v. Walker*, 258 F. Supp. 2d 105, 118 (E.D.N.Y. 2003) (quoting N.Y. Penal Law § 125.25(1)). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00.

Given that "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction," *Flowers*, 2009 WL 2986738, at *20 (quoting *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979)), it is clear that there was more than sufficient evidence supporting Petitioner's conviction. The victim, Matthews, testified that during an argument with Petitioner, he pointed a gun at her. (Tr., Dkt. 7-3, at ECF 917:9–11.) Later, as the fight escalated, Petitioner ran after Matthews when she tried to get away, stabbed her in the head with a screwdriver, hit her over the head with a rum bottle, and then stabbed her repeatedly in the back and right side of her body with a knife. (Tr., Dkt. 7-3, at ECF 918:18–921:15.) Matthews's testimony was corroborated by her cousin, Saran Townsend, who testified that she heard the beginning of the argument over the phone and recognized Petitioner's voice. (Tr., Dkt. 7-3, at ECF 1015:22–1016:7, 1016:19–

1017:3.)  Matthews's testimony was also corroborated by her father, Byron Matthews, who testified that the day after the incident, Petitioner called him and said "[h]e's sorry about what happened but he will call me back and explain [it] to me."  (Tr., Dkt. 7-2, at ECF 809:17–18.) Finally, Dr. Natalie Hubbard, the doctor who treated Matthews, testified that her injuries, which included two skull fractures and several stab wounds, were so severe that they could have been life-threatening absent treatment.  (Tr., Dkt. 7-3, at ECF 1006:5–11, 1006:17–1007:2.)

From this evidence, a jury could have found beyond a reasonable doubt that it was Petitioner who stabbed Matthews and that he did so with the intent to cause her death.  *See Tigner v. Lee*, No. 11-CV-4432 (KMK) (GAY), 2014 WL 4979697, at *9 n.3 (S.D.N.Y. Oct. 3, 2014) ("The Second Circuit has held that evidence of a single stab wound is sufficient to justify a reasonable inference of a defendant's intent to kill, and is enough to defeat a sufficiency of evidence claim.") (citing *United States v. Carneglia*, 403 F. App'x 581, 588 (2d Cir. 2010) (summary order)); *Kelly v. Lempke*, No. 08-CV-8241 (BSJ) (RLE), 2011 WL 2227174, at *13 (S.D.N.Y. Apr. 7, 2011) ("A juror is permitted to infer that a defendant intended the logical consequences of his action.  Stabbing a person in the chest invites a strong inference of murderous intent."); *People v. Anonymous*, 62 N.Y.S.3d 269 (N.Y. App. Div. 2017); *see also Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts.") (internal quotations and citation omitted).  While Petitioner testified to an alternate version of events on the day of the incident, the jury was entitled to reject his testimony, as they apparently did.  *See Crawford v. New York*, No. 07-CV-4760 (SLT), 2010 WL 2651654, at *7 (E.D.N.Y. June 28, 2010) ("When reviewing a case for legal sufficiency, a court may not 'disturb the jury's findings with respect to [a witness']

13

credibility' about testimony presented at Petitioner's trial.") (quoting *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989)); *see also United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002) ("[I]t is well-settled that when reviewing the sufficiency of the evidence we defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony.") (internal quotations and citation omitted).

Petitioner challenges his conviction on the grounds that the prosecution did not show that any of the weapons used to assault Matthews had Petitioner's DNA or fingerprints on them.[9] (Petition, Dkt. 1, at 13.) This argument is unavailing. "Here, as in many cases, the jury's decision was largely a matter of choosing whether to believe [Petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 362 (N.D.N.Y. 2013) (internal quotations and citation omitted). Therefore, Petitioner's argument that some of the trial evidence is inconsistent with his conviction, is not enough to support a claim for legal insufficiency. *See Cavazos v. Smith*, 565 U.S. 1, 7 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not

---

[9] Specifically, Petitioner argues that the knife used to stab Matthews did not have his fingerprints on it. (Petition, Dkt. 1, at 13.) He argues that this "[c]learly support[s] [Petitioner's] version of the incident, [*i.e.*] that, he had come home unexpected to see another man in his apartment with [the victim]." (Petition, Dkt. 1, at 13; *see also id.* at 14 (arguing that if the incident occurred according to the prosecution's version, "no doubt about it [Petitioner's] finger[]prints would have been all over said weapon").) The record does not support Petitioner's allegations. At trial, the parties agreed to a stipulation noting that the knife recovered from Matthews's apartment was vouchered and sent to a warehouse that was then destroyed by Hurricane Sandy, making it impossible for the prosecution to recover the knife for testing and presentation to the jury. (Tr., Dkt. 7-3, at 1069:1–11.) None of the other weapons were tested for fingerprints: the screwdriver and rum bottle were never collected from Matthews's apartment (Tr., Dkt. 7-3, at ECF 1079:7–10, 1204:3–8; 1204:20–1205:1), and the gun was tested only for DNA, not fingerprints, but the results from multiple samples either excluded Petitioner or were inconclusive (Tr., Dkt. 7-3, at ECF 1043:14–15, 1043:25–1044:2). Criminalist Tamariz testified to these DNA test results for the gun at trial. (*Id*. at 1043:16–1045:1.)

affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326); *see also Flowers*, 2009 WL 2986738, at *20 ("A sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact.") (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Furthermore, because none of the weapons used in the attack on Matthews were tested for fingerprints, *see supra* n.9, the absence of a fingerprint match for Petitioner on any of the weapons cannot even be viewed as inconsistent with the account presented by the prosecution.

Accordingly, *habeas* relief is denied on Petitioner's legal insufficiency claim.

## III.  Ineffective Assistance of Appellate Counsel Claim

"The Supreme Court in *Strickland* set forth a two-part test for evaluating claims of ineffective assistance of counsel.  To warrant relief, a defendant must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "Under *Strickland*'s first prong, counsel's conduct falls to the level of being deficient if 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Eze*, 321 F.3d at 125 (quoting *Strickland,* 466 U.S. at 687). Under the second prong, a counsel's conduct prejudiced the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Eze*, 321 F.3d at 123 (quoting *Strickland*, 466 U.S. at 688, 694).

"To prevail [on an ineffective-assistance claim], a defendant must establish both of *Strickland*'s prongs because, otherwise, 'it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the process

unreliable, and the sentence or conviction should stand.'" *Eze*, 321 F.3d at 123 (quoting *Bell v. Cone*, 535 U.S. 685, 695 (2002)). Furthermore, "[o]ur scrutiny of counsel's performance must be 'highly deferential' because we must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689).

"This [*Strickland*] test applies in the appellate context as well as at trial." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). Appellate "counsel has no duty to raise every non-frivolous issue that could be raised. Nevertheless, appellate counsel's performance must meet prevailing professional norms." *Id.* "Thus, a petitioner asserting a claim of ineffective assistance of appellate counsel must show both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal and that, but for counsel's malfeasance, there was a reasonable probability that defendant's appeal would have been successful." *Hicks v. Ercole*, No. 09-CV-2531 (AJN), 2015 WL 1266800, at *21 (S.D.N.Y. Mar. 18, 2015).

Petitioner argues that appellate counsel was ineffective for failing to raise two arguments on direct appeal. (*See* Petition, Dkt. 1, at 2.) First, Petitioner claims that appellate counsel was ineffective because she did not argue that trial counsel was ineffective for failing to object to the jury instruction on second-degree weapons possession. (*Id.* at 7–8.) Second, Petitioner maintains that appellate counsel was also ineffective for neglecting to argue that trial counsel was ineffective for failing to object to the jury's repugnant verdict. (*Id.* at 10–12.)

## A. Failure to Object to Jury Charge

Petitioner first argues that his appellate counsel's performance was deficient because she did not argue that Petitioner's trial counsel was ineffective for "fail[ing] to object to the erroneous

instruction issued to the jury by the trial [c]ourt concerning the criminal possession of a weapon in the second-degree count of the indictment, in regards to the attempted murder in the second-degree count." (*Id.* at 7.) Because the Second Department rejected this claim on the merits, *Newton*, 164 A.D.3d at 923, that court's decision is entitled to AEDPA deference. *See* § 2254(d); *Eze*, 321 F.3d at 121; *see also Jenkins v. Artuz*, 294 F.3d 284, 291 (2d Cir. 2002) (noting that "an even more concise Appellate Division disposition—the word 'denied'—trigger[s] AEDPA deference").

Petitioner's claim fails. First, the Court notes that Petitioner was acquitted of the second-degree weapons possession count. (Tr., Dkt. 7-4, at 1274:18–1275:10.) Therefore, Petitioner is not able to show prejudice regarding any error his counsel, trial or appellate, might have made with respect to the jury instruction on this weapons charge. *Cf. Eze*, 321 F.3d at 123 (noting that a defendant is only prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (quoting *Strickland*, 466 U.S. at 688, 694).

However, Petitioner appears to argue that the jury instruction on weapons possession was erroneous because of the effect it had on the jury's decision to convict Petitioner of attempted second-degree murder. (Petition, Dkt. 1, at 8.) Specifically, Petitioner argues that

> The [trial court] had erroneously charged the jury that [Petitioner] had intentionally possessed the dangerous instrument with the intention of using said dangerous instrument against the victim unlawfully[,] which preclude[d] the jury from considering whether [Petitioner] had initially possessed the dangerous instrument without intending to use it unlawfully against another but decided to use the dangerous instrument as events unfolded. In such an instant, a verdict[]finding defendant guilty of attempted murder in the second degree, but acquitted of criminal possession of a weapon in the second degree is an inconsistent and repugnant verdict.

(*Id.* at 7–8 (internal brackets omitted).)

17

Assuming, *arguendo*, that a jury instruction can be challenged for its effect on a jury's determination on a different charge, this claim still fails. "'In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.'" *Smith v. Herbert*, 275 F. Supp. 2d 361, 369 (E.D.N.Y. 2003) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)). Specifically, "a petitioner must show not merely that a particular jury instruction is 'undesirable, erroneous, or even universally condemned,' but also that it violated some right that was guaranteed to him by the federal constitution." *Russo v. Zon*, No. 05-CV-0293 (MAT), 2009 WL 3614527, at *12 (W.D.N.Y. Oct. 26, 2009) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). Petitioner argues that the erroneous weapons possession instruction led the jury to issue an inconsistent or repugnant verdict. (Petition, Dkt. 1, at 8.) His argument is unavailing.

First, the Court does not find that the weapons-possession instruction given by the trial court was erroneous. Under New York law, "[a] person is guilty of criminal possession of a weapon in the second degree when [] with intent to use the same unlawfully against another, such person [] possesses a loaded firearm." N.Y. Penal Law § 265.03(1)(b). The jury instruction given by the trial court for this charge stated:

> Under our law, the possession by any person of any loaded firearm is presumptive evidence of intent to use the same unlawfully against another. What that means is that if the People have proven beyond a reasonable doubt that the defendant possessed a loaded firearm, *then you may but you are not required to infer* from that fact that he did so with the intent to use the same unlawfully against another. However, the fact that you may infer such unlawful intent does not shift to the defendant any burden of proof whatsoever. The burden of proof remains upon the prosecution throughout the case to prove each and every element of the offenses charged. . . .

(Tr., Dkt. 7-4, at ECF 1256:22–1257:10 (emphasis added).)  The trial court, contrary to Petitioner's assertion, did not instruct the jury that the Petitioner "had intentionally possessed the dangerous instrument with the intention of using said dangerous instrument against the victim unlawfully" (Petition, Dkt. 1, at 8), but rather told the jury that *if* they found that the prosecution had *proved* that Petitioner possessed a loaded firearm, they *could, but were not required to,* infer that Petitioner had intended to use the firearm unlawfully.  Furthermore, the trial court's instructions closely followed the pattern jury instruction for a presumption of unlawful intent.  (*Compare* Tr., Dkt. 7-4, at ECF 1256:22–1257:10, *with* N.Y. Crim. Jury Instr. 2d Penal Law § 265.15(4).)  Therefore, the Court does not find that the trial court's jury instruction regarding the weapons possession charge was erroneous.  *See McRae v. Senkowski*, No. 01-CV-2916 (GWG), 2002 WL 1880730, at *12 (S.D.N.Y. Aug. 15, 2002) (rejecting similar argument on *habeas* review where "the jury instruction did not misstate state law") (internal quotations, brackets, and citation omitted).

Moreover, even assuming *arguendo*, that the jury instruction was erroneous, Petitioner would still not be entitled to relief.  Petitioner argues that the erroneous jury instruction led the jury to issue an inconsistent or repugnant verdict.  (Petition, Dkt. 1, at 7–8.)  However, "an allegedly inconsistent verdict does not present a constitutional violation."[10]  *Muldrow v. Herbert*, 299 F. Supp. 2d 166, 170 (W.D.N.Y. 2004); *see also Brown v. Perlman*, No. 07-CV-8672 (RMB) (AJP), 2008 WL 2009220, at *34 (S.D.N.Y. May 8, 2008) ("It is well settled that inconsistent jury verdicts are not a ground for habeas relief."), *report and recommendation adopted*, 2008 WL 2545066 (S.D.N.Y. June 23, 2008); *Bowden v. Keane*, 85 F. Supp. 2d 246, 251 n.6 (S.D.N.Y.2000) ("[A] jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on

_____

[10] For reasons discussed *infra*, the Court also rejects the argument that the jury issued a repugnant verdict in Petitioner's case.

one count that it may seem to have rejected in acquitting on other counts."), *aff'd* 237 F.3d 125 (2d Cir. 2001); *United States v. Powell*, 469 U.S. 57, 58, 64–65 (1984) ("[W]here truly inconsistent verdicts have been reached, [t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. . . . It is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense.") (internal quotations and citation omitted).

Therefore, Petitioner has not shown that the jury instruction he challenges is erroneous or deprived him of a federal right. Since Petitioner's jury charge claim is meritless, his trial counsel would have no basis for raising such an objection at trial and his appellate counsel had no reason to address the lack of such an objection on appeal. *See Flowers*, 2009 WL 2986738, at *20 ("Failure to make a meritless argument does not amount to ineffective assistance.") (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)); *see also see also Rolling v. Fischer*, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless."). Consequently, the Court finds that the Second Department's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. *See, e.g.*, *Washington*, 876 F.3d at 403.

## B.    Failure to Object to the Repugnant Verdict

Petitioner also argues that his appellate counsel's performance was deficient because she failed to argue that trial counsel was ineffective when he did not object to the repugnant verdict reached by the jury.  (*See* Petition, Dkt. 1, at 10 ("[D]efense counsel failed to object to the inconsistent and repugnant verdict until after the jury was discharged, when it was no longer possible to remedy any defect by resubmission of the verdict to the jury for its reconsideration.").) Petitioner claims that the verdict was repugnant because "the criminal possession of a weapon in the second-degree element was an essential element of proving the crime of attempted murder in the second[-]degree; wherefore, once the jury acquitted [P]etitioner on the weapon count of the indictment and found him guilty of attempted murder in the second-degree, the verdict became repugnant." (Traverse, Dkt. 6, at 2.)[11]  Because the Second Department rejected this claim on the merits, *Newton*, 164 A.D.3d at 923, that court's decision is entitled to AEDPA deference.  *See* § 2254(d); *Eze*, 321 F.3d at 121; *see also Jenkins*, 294 F.3d at 291.

---

[11] The Court notes that Petitioner's original repugnancy argument was different.  (*See* Petition, Dkt. 1, at 11 (arguing that the verdict was repugnant because "the record is utterly clear that the jury's acquittal on the weapon charge, an essential element of which was intent to use unlawfully, represents a finding of lack of intent to use the knife unlawfully at the time of the stabbing").)  The Court assumes that Petitioner's argument changed to reflect the fact that Petitioner was acquitted of a weapons possession charge related to a firearm, whereas the attempted murder charge involved various other dangerous weapons.  (Tr., Dkt. 7-4, at 1274:18–1275:10; *see also id.*, Dkt. 7-3, at ECF 918:18–921:15.)  Though Petitioner was indicted on weapons charges for these other weapons, the prosecution dismissed these charges before they were submitted to the jury.  (Tr., Dkt. 7-3, at ECF 1079:7–14.)  Therefore, these other weapons possession charges are not implicated in any determination of a repugnant verdict; only the firearm possession charge is.  *See Granston v. McGinnis*, No. 00-CV-2349 (JBW), 2003 WL 21508327, at *2 (E.D.N.Y. June 6, 2003) ("[A] verdict is only legally inconsistent if a defendant is 'convicted for a crime on which the jury has *actually found* that the defendant did not commit an essential element, whether it be one element or all.'") (quoting *People v. Tucker*, 55 N.E.2d 617, 619 (N.Y. 1981)).

Generally, a repugnant verdict claim is not cognizable on federal *habeas* review. *Muldrow*, 299 F. Supp. 2d at 170 ("[A]n allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review."). However, given that appellate counsel may be found ineffective if she "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Lynch*, 789 F.3d at 311, the Court must analyze the merits of Plaintiff's repugnancy claim in order to determine whether Petitioner's trial and appellate counsel were ineffective for failing to raise this issue at trial or on appeal. *See Finley v. Graham*, No. 12-CV-9055 (KMK) (PED), 2016 WL 47333, at *13 (S.D.N.Y. Jan. 4, 2016) ("Where, as here, a petitioner has asserted that appellate counsel provided ineffective assistance by failing to raise as a ground for relief on appeal trial counsel's ineffective assistance, he or she must necessarily establish that trial counsel was ineffective."); *see also Flowers*, 2009 WL 2986738, at *18 (noting that "the Court can consider [a petitioner's] repugnancy claim in the context of his Sixth Amendment ineffective assistance claim").

"[A] New York court may set aside a verdict as repugnant where the defendant is convicted on an offense containing an essential element that the jury has found the defendant did not commit.'" *Brunson v. Tracy*, 378 F. Supp. 2d 100, 104 n.1 (E.D.N.Y. 2005) (quoting *People v. Trappier*, 87 N.Y.2d 55, 58 (N.Y. 1995)); *see also Granston*, 2003 WL 21508327, at *2 ("[A] verdict is only legally inconsistent if a defendant is convicted for a crime on which the jury has *actually found* that the defendant did not commit an essential element, whether it be one element or all.") (internal quotations and citation omitted). "[T]he focus is on the elements of the crime *as charged*, not on the evidence." *Flowers*, 2009 WL 2986738, at *18.

Petitioner was originally charged with seven counts. (*See* Tr., Dkt. 7-3, at ECF 1079:24–1080:5.) However, at the end of the trial, only four charges were submitted to the jury: attempted

second-degree murder, assault in the first degree, assault in the second degree, and criminal

possession of a weapon in the second degree, relating to the firearm. (Tr., Dkt. 7-4, at

ECF 1249:17–18, 1254:9–10, 1256:7–8, 1259:3–4.) The elements of the criminal possession of a

weapon in the second-degree offense, as charged to the jury, were:

> [One,] [t]hat on or about September 10, 2012 in the County of Queens, the
> defendant, Albert Newton possessed a firearm[;]
>
> Two[,] that the defendant did so knowingly[;]
>
> Three[,] that the firearm was loaded and operational[;] and
>
> [F]our, that the defendant possessed the loaded firearm with the intent to use it
> unlawfully against another.

(Tr., Dkt. 7-3, at ECF 1258:12–18 (jury instructions).) *See also* N.Y. Penal Law § 265.03(1)(b).

The elements of the attempted second-degree murder offense, as charged to the jury, were:

> One[,] that on or about September 10, 2012 in the County of Queens, the defendant,
> Albert Newton intended to commit the crime of Murder in the Second Degree[;]
> and
>
> [T]wo[,] that the defendant engaged in conduct which tended to effect the
> commission of that crime.

(Tr., Dkt. 7-3, at ECF 1253:20–24 (jury instructions).) *See also* N.Y. Penal Law §§ 110.00,

125.25(1). Therefore, even though Petitioner was convicted on the attempted murder charge and

acquitted on the weapons possession charge, the verdict is not repugnant because none of the

elements of the attempted murder charge are an "essential element" of the weapons possession

charge, *i.e.*, a person can be guilty of attempted murder without criminally possessing a firearm.

*See Brunson*, 378 F. Supp. 2d at 104 n.1. As the New York Court of Appeals has explained,

> in a case where charge 1 requires proof of elements A, B and C; charge 2 requires
> proof of elements A, B, C, and D. If the jury convicts a defendant on the second
> charge, thereby finding that all four elements have been proven beyond a reasonable
> doubt, but acquits on the first charge, the verdict is repugnant since the acquittal
> would necessarily involve a finding that at least one of the essential elements of

charge 2—either A, B or C—was not proven beyond a reasonable doubt.  As an extension of that hypothetical, if in another case the elements of charge 1 were A, B, C and E (rather than D), an acquittal on that count would not necessarily negate guilt on charge 2 because the jury could have found that element E—which was not an element of charge 2—was not proven by the People beyond a reasonable doubt, but elements A, B, C and D were.  Under the latter scenario, there is no legal repugnancy.

*People v. Muhammad*, 959 N.E.2d 463, 468–69 (N.Y. 2011) (internal quotations and citation omitted).

Thus, given that the jury's verdict was not repugnant, trial counsel was not required to object to it, and appellate counsel was not ineffective for failing to argue that trial counsel performed deficiently by not making the objection.  *See Flowers*, 2009 WL 2986738, at *20 ("Failure to make a meritless argument does not amount to ineffective assistance.") (quoting *Arena*, 180 F.3d at 396); *see also Rolling*, 433 F. Supp. 2d at 351 ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless.").  As a result, the Court finds that the Second Department's rejection of Petitioner's claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings.  *See, e.g.*, *Washington*, 876 F.3d at 403.

*     *     *

Accordingly, *habeas* relief is denied on Petitioner's ineffective assistance of appellate counsel claim.[12]

---

[12] Petitioner also appears to challenge his appellate counsel's effectiveness on two additional grounds. (Petition, Dkt. 1, at 2–3 (noting that the "question of [l]aw, which ought to be reviewed" included whether Petitioner's appellate counsel was ineffective for failing to argue that "(3) the trial [c]ourt abused its discretion in denying defense counsel's request for [an] overnight

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpu*s pursuant to 28 U.S.C. § 2254 is denied. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotations, ellipsis, and citation omitted). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 27, 2019
      Brooklyn, New York

---

adjournment; and (4) the evidence did not support the verdict of attempted murder").) Petitioner does not support these claims in his briefing, effectively abandoning them. *See Taylor v. Sabourin*, 269 F. Supp. 2d 20, 22 (S.D.N.Y. 2003) (holding that a claim not supported by factual allegations in *pro se* petitioner's petition or defended in his traverse is abandoned). However, even if these additional claims were not abandoned, they would still fail. First, the Court notes that Petitioner's appellate counsel *did* raise an abuse of discretion claim relating to the trial court's adjournment denial. (*See* R., Dkt. 6, at 1–21.) Moreover, given that the Court already found Petitioner's legal insufficiency and abuse of discretion claims to be meritless, *see supra*, Petitioner's appellate counsel was not ineffective for failing to raise them. *See Flowers*, 2009 WL 2986738, at *20 ("Failure to make a meritless argument does not amount to ineffective assistance.") (quoting *Arena*, 180 F.3d at 396).